# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VEGAS GIBSON, | : | CIVIL NO: 1:12-CV-02443 |
| | : | |
| Petitioner, | : | |
| | : | (Judge Kane) |
| v. | : | |
| | : | |
| JEROME WALSH, | : | |
| | : | (Magistrate Judge Schwab) |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

The petitioner, Vegas Gibson ("Gibson"), filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his May 23, 2005, Dauphin County, Pennsylvania jury trial convictions for first-degree murder, two counts of aggravated assault, recklessly endangering another person, and illegal possession of a firearm.  Having reviewed Gibson's petition, along with the parties' arguments and relevant exhibits, we recommend that the Great Writ not be granted.

## I.     **Background and Procedural History**.

The Superior Court of Pennsylvania aptly summarized the facts leading to

Gibson's arrest as follows:

> During the daylight afternoon hours of Friday, February 26, 2004, [Gibson's] half-brother and co-defendant, James Williams, attacked Hassan Babil in the vicinity of a public housing project located on the south side of the City of Harrisburg, Dauphin County, Pennsylvania.  During the attack, Williams stabbed Babil in the face with a knife, which broke in Babil's cheekbone. On the following Saturday evening, February 27, 2004, close to midnight, Jason Green, Willie Green, Juliet Reeves, and Jason Brown entered Lawson's Bar in Steelton, Pennsylvania, after having been out at other establishments.  Jason Green, Willie Green, and Jason Brown were all cousins of Hassan Babil, and they had previously spoken to him about the stabbing that occurred on February 26, 2004.  Inside the bar, these individuals observed [Gibson] and others.  They knew that [Gibson] was the half-brother of Williams. Williams arrived at Lawson's Bar later, accompanied by four other individuals.  Shortly thereafter a barroom fight erupted amongst Willie Green, Jason Green, and James Williams.  After the fight was broken up, the individuals exited the bar.
>
> [While outside the bar, Gibson] withdrew a Ruger 9-mm handgun from his waist, pointed it at Jason Green, and fired the gun multiple times.  [Gibson] shot Jason Green in the abdomen, Juliet Reeves in the leg, and Willie Green in the leg.  Jason Green died shortly afterwards at a Harrisburg hospital.
>
> [Gibson] fled the jurisdiction and was finally apprehended in Mobile, Alabama, through investigation by the United States Marshal's Service and the Dauphin County Criminal Investigation Division.  The Marshal's Service arrested [Gibson] on April 15, 2004, in a residence in Mobile.

*Commonwealth v. Gibson*, No. 43 MDA 2011, slip op. at *1-2 (Pa. Super. Ct. November 9, 2011) [*Doc.* 14-17].

Following his arrest, Gibson stood trial in Dauphin County, Pennsylvania, along with his co-defendant, Williams, on charges of first-degree murder, two counts of aggravated assault, reckless endangering, and illegal possession of a firearm.  *Id.* At trial, Willie Green and Jason Brown ("Brown") testified that Gibson asked Williams if he wanted him to handle the situation following the fight inside the bar, and Williams told him to handle it.  *Id.* Williams testified, however, that no such conversation occurred.  *Id.* Similarly, Gibson testified that he did not speak with Williams outside of the bar.  *Id.*  Rather, Gibson testified that he shot the victims in self-defense.  *Id.*

On May 16, 2005, a jury convicted Gibson of all counts.  Thereafter, on July 26, 2005, Gibson was sentenced as follows: (1) first-degree murder: life imprisonment;  (2)-(3)  aggravated  assault:  60-120  consecutive  months imprisonment; (4) reckless endangering: two years' probation; and (5) persons not to possess firearms: 12-120 consecutive months imprisonment.  *Id.* at *3; *Doc.* 14-4 at 9.  Following his sentencing, Gibson filed a direct appeal to the Superior Court of Pennsylvania.

On direct appeal to the Superior Court, Gibson raised a single issue. Specifically, Gibson argued that he was prejudiced by the prosecutor's statement that Williams was permitted to "run wild with whatever answer" he wanted to give. *Doc.* 14-8 at 7, 10-14. In filing his direct appeal, however, Gibson did not comply with Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. *See Doc.* 14-10. Nevertheless, despite deeming the issue raised in his direct appeal as waived, the Superior Court proceeded to address the merits by relying upon and adopting the trial court's opinion, wherein Gibson's convictions were upheld. *Id.* at 5. The Superior Court added:

> [T]he prosecutor's comment, to which Gibson assigns error, was an isolated remark in a six-day trial which comprised 848 pages of testimony, including thirteen Commonwealth and seven defense witnesses. In this context, we cannot conclude that the prosecutor's comment constituted error.

*Id.* Following the Superior Court's decision, Gibson timely filed a petition for allowance of appeal to the Supreme Court of Pennsylvania, which was ultimately denied on April 25, 2007. *See Doc.* 14-18 at 3. Moreover, there is nothing in the record to reflect that Gibson filed a petition for a writ of certiorari to the United States Supreme Court.

On February 4, 2008, following the conclusion of his direct appeal, Gibson filed a petition for post-conviction relief pursuant to Pennsylvania's Post-Conviction Relief Act ("PCRA"). With appointed counsel, an evidentiary hearing

was held in December 2009.  The hearing, though, was continued to March 2010 because the court was frustrated with the witnesses' lack of preparation.  *See Doc.* 14-12 at 71-72.  At the second hearing, five witnesses testified including Gibson, Gibson's trial counsel, and Gibson's appellate counsel.  *See Doc.* 14-13 at 2.  After the March 2010 hearing, the PCRA court denied Gibson's PCRA petition.  *See Doc.* 14-15.  Gibson appealed that denial, and on November 9, 2011, the Pennsylvania Superior Court affirmed the PCRA court's ruling.  *Doc.* 14-17.  The Superior Court considered the following issues:

1) Whether the PCRA Court erred by denying Gibson's PCRA petition because he was represented by counsel;

2) Whether trial counsel was ineffective because he failed to properly investigate and call potential character witnesses to testify to Gibson's reputation of peacefulness in the community;

3) Whether trial counsel was ineffective because he failed to properly investigate the criminal background of Jason Brown, a material witness;

4) Whether trial counsel was ineffective because he failed to object to the prejudicial statement made by the Commonwealth during closing argument that "These guys are not the most unlucky men in the world. They are killers who try to run, who give false testimony, who scare witnesses;"

5) Whether trial counsel was ineffective because he failed to object to the Commonwealth's reference to his post-arrest silence.  Specifically, the Commonwealth's statement that the trial was the first time anyone heard about self-defense;

6) Whether appellate counsel was ineffective for failing to raise the issue of the trial court's decision to exclude testimony as to Gibson's knowledge of Jason Brown's violent history;

7) Whether trial counsel was ineffective because he failed to object to the Commonwealth attorney's impermissible vouching for witnesses' credibility; and

8) Whether the Commonwealth was in violation of the *Brady v. Maryland* dictates for failing to turn over evidence of Jason Brown's arrest for criminal attempt homicide and aggravated assault charges.

*Docs.* 14-16 at 2-3; 14-17 at 4-5.   In affirming the PCRA court's denial of Gibson's PCRA petition, the Superior Court adopted the PCRA court's Rule 1925 opinion as its own with respect to issues 1, 2, 3, 4, 5, 7, and 8.  *Doc.* 14-17 at 6. With respect to issue 6, the Superior Court concluded that the trial court erred in excluding Gibson's testimony about his knowledge of Brown's violent history.  *Id.* at 8.  Nevertheless, the Superior Court held that the issue was meritless because "[t]he jury heard testimony from [Gibson] regarding instances in which he personally observed Brown commit acts of violence and other witnesses testified at [Gibson's] trial about violent episodes in which Brown was involved," as such Gibson failed to demonstrate "a fair probability that the outcome of the proceedings at trial or on appeal would have been different if counsel had challenged the trial court's evidentiary ruling…."  *Id.*  Subsequently, on June 20, 2012, the Pennsylvania Supreme Court denied Gibson's petition for allowance of

appeal, *Doc.* 14-18 at 6, and there is nothing in the record to reflect that Gibson sought further appellate review on his PCRA petition.

On December 7, 2012, Gibson filed this federal petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.   *Doc.* 1.  He presents the following 14 Grounds:

1) Ineffective assistance of trial counsel for not objecting to the prosecutor's purported references, during closing argument, to Gibson's self-defense claim and post-arrest silence;

2) Ineffective assistance of trial counsel for not filing a motion to sever;

3) Ineffective assistance of trial counsel for counsel's "failure" to investigate, develop, and present evidence in support of Gibson's self-defense claim, namely the criminal background of a key prosecution witness;

4) Ineffective assistance of trial counsel for not objecting to the trial court's refusal to allow Gibson to testify about his knowledge of a key witness' history of violence, and ineffective assistance of appellate counsel for not raising the same on direct appeal;

5) The Commonwealth committed a *Brady* violation by not disclosing a key witness' criminal history;

6) Ineffective assistance of trial counsel for not objecting to the prosecutor's purported statements during closing argument that "shifted" the burden of proof;

7) Ineffective assistance of trial counsel for not asserting that Gibson's right to counsel at all critical stages was violated;

8) Trial court error for the court's "failure" to "properly colloquy" Gibson at arraignment;

9) Ineffective assistance of appellate counsel for not securing a complete record for purposes of filing an appeal;

10)    Ineffective assistance of trial counsel for not investigating and calling character witnesses, who were "willing" to testify on Gibson's behalf;

11)    Ineffective assistance of trial counsel for not objecting and moving for a mistrial when the prosecutor, during closing arguments, "intentionally" misstated the evidence;

12)    Ineffective assistance of trial counsel for not objecting and moving for a mistrial when the prosecutor, during closing arguments, "vouched" for two witnesses;

13)    Ineffective assistance of trial counsel for not objecting, moving for a mistrial, or moving to strike a witness' testimony, wherein a witness purportedly testified that he was threatened by the prosecution; and

14)    The cumulative effect of the prosecutor's alleged misconduct rendered Gibson's trial fundamentally unfair.

*Doc.* 1 at 7-27.   After Gibson filed this federal habeas corpus petition, we conducted a preliminary review under Rule 4 of the Rules Governing Section 2254 Cases.   Rather than recommending dismissal, we ordered Gibson to fill out an election form, pursuant to the Third Circuit's mandate in *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000).   *Doc.* 6.   Gibson, however, did not respond to our Order. Accordingly, by default, Gibson elected to proceed on his petition as filed.   *See id.* Thereafter, pursuant to Court Order (*Doc.* 8), the respondent filed an answer to the petition.   In the answer, respondent addresses Grounds 1, 3-6, 10-12, and 14 on the

merits, and he argues that Grounds 2, 7-9, and 13 have been procedurally defaulted because they were not previously presented in State court. *Doc.* 14-2 at 5.

After reviewing Gibson's federal petition in relation to the respondent's answer, we exercised discretion to appoint a federal public defender to represent him. *Doc.* 18. Through counsel, Gibson filed a reply. *Doc.* 24. In his reply, Gibson voluntarily withdrew Grounds 2, 7, 9, 10 and 14, and he consolidated Grounds 11 and 12. *Id.* at 10.[1] From there, we ordered the parties to answer four questions relating to this federal habeas corpus petition:

1) Ground 1: Whether the Court should consider the prosecutor's line of questioning to Gibson on cross-examination, when the PCRA court only addressed this ground in connection to the prosecutor's comments during closing argument. In other words, was this ground "fairly presented" to the state courts, in full?

2) Ground 4: Whether, in light of *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) and other federal district court interpretations of that opinion, *e.g., Au v. Buss*, No. 2:11-CV-103, 2014 WL 842446, at *11 (M.D. Fl. Mar. 4, 2014) and *Aytch v. LeGrand*, No. 3:10-CV-00767-RCJ, 2013 WL 1326488, at *12 (D. Nevada Mar. 29, 2013), this ground [has] been exhausted and / or procedurally defaulted. Further, if ground 4 has been procedurally defaulted, can Gibson demonstrate cause and prejudice to overcome the procedural default?

---

[1]     As stated in his reply brief, although Gibson voluntarily withdrew Grounds 9 and 10, he uses the arguments set forth in those Grounds to establish the basis for Grounds 4 and 3, respectively. *Doc.* 24 at 10.

[2]     Exceptions to the exhaustion requirement are made when: (1) the state

3) Ground 6:  Whether, in response to the Court's exercise of its discretion to raise the issue of procedural default *sua sponte*, *Sweger v. Chesney*, 294 F.3d 506, 521-22 (3d Cir. 2002), Gibson can demonstrate cause and prejudice to overcome the apparent procedural default.

4) Grounds 11 and 12: Whether these grounds have been properly exhausted in light of Gibson's attempts to inject facts in his petition that were not taken into consideration when the substantive ineffective assistance of counsel claims were addressed by the state courts.

*Doc.* 33.  On April 9 and 24, 2014, the parties satisfactorily answered the questions posed to them.  *Docs.* 34 & 35.  The petition is now ripe for disposition on the merits without the necessity for an evidentiary hearing.

## II.   Habeas Corpus Legal Standards.

The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law, and a habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a state prisoner to challenge the "fact or duration" of his confinement on the ground that he or she is in custody, in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Preiser v. Rodriguez*, 411 U.S. 475, 498–99 (1973); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Johnson v. Rosemeyer*, 117 F.3d 104, 114 (3d Cir. 1997).  Thus, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Estelle*, 502 U.S. at 67-68.

10

Given the supreme nature of the writ, federal courts reviewing habeas corpus petitions must be vigilant and independent, a commitment that entails substantial judicial resources.   To accomplish this great task, "[f]ederal habeas courts reviewing the constitutionality of a state prisoner's conviction … are guided by [certain] rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez v. Ryan*, 132 S.Ct. 1309, 1316 (2012).

### A. Exhaustion and Procedural Default.

Among the rules guiding federal habeas courts, state prisoners must first exhaust available State court remedies before seeking relief.[2] 28 U.S.C. §§ 2254(b)-(c); *see also Cone v. Bell*, 556 U.S. 449 (2009); *Rose v. Lundy*, 455 U.S. 509, 515–20 (1982); *Toulson v. Beyer*, 987 F.2d 984, 986 (3d Cir. 1993); *Gibson v. Scheidemantel*, 805 F.2d 135, 138 (3d Cir. 1986).   This general rule promotes the interests of comity and finality by providing State courts with the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.   *Baldwin v.*

---

[2]   Exceptions to the exhaustion requirement are made when: (1) the state corrective process is so deficient as to render any effort to obtain relief futile, 28 U.S.C. § 2254(b); (2) acts of state officials have, in effect, made state remedies unavailable to the petitioner, *Mayberry v. Petsock*, 821 F.2d 179, 184 (3d Cir. 1987); or (3) "inordinate delay" in state proceedings has rendered state remedies ineffective. *Story v. Kindt*, 26 F.3d 402, 405 (3d Cir. 1994); *Schandelmeier v. Cunningham*, 819 F.2d 52, 55 (3d Cir. 1986).

*Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999).

In order for a claim to be exhausted, it must have been fairly presented to the State courts through "one complete round of the State's established appellate review process." *Nara v. Frank*, 488 F.3d 187, 197 (3d Cir. 2007) (internal citations and quotation marks omitted).  To do so, a petitioner need only "describe in the state proceedings both the operative facts and the federal legal theory on which his claim is based so that the State courts have a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim." *Alongsi v. Ricci*, 367 F. App'x 341, 345 (3d Cir. 2010)(quoting *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008) (internal citations and quotation marks omitted)). The petitioner bears the burden of demonstrating that he or she has satisfied the exhaustion requirement. *Lines v. Larkins*, 208 F.3d 153, 159 (3d Cir. 2000).

This exhaustion rule requires a federal court to dismiss without prejudice habeas petitions that contain any unexhausted claims.  *Slutzker v. Johnson*, 393 F.3d 373, 379 (3d Cir. 2004).   Nevertheless, for claims that were not fairly presented to the State court, but for which "further state-court review is clearly foreclosed under state law, exhaustion is excused on the ground of futility." *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001).   Although futile claims are deemed exhausted for federal habeas purposes, such claims are also procedurally

defaulted; federal courts are not permitted to evaluate the merits of procedurally defaulted claims unless the petitioner "establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse [the] default." *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *see also Coleman v. Thompson*, 501 U.S. 722, 750–51 (1991).

To demonstrate "cause" for a procedural default, the petitioner must show that "'some objective factor external to the defense ... impeded [his or her] ... efforts to comply with the ... [state] procedural rule.'" *Leyva v. Williams*, 504 F.3d 357, 366 (3d Cir. 2007) (quoting *Slutzker*, 393 F.3d at 381); *Murray v. Carrier*, 477 U.S. 478, 488 (1986). By way of example, showing that a factual or legal basis for a claim was not reasonably available to counsel or showing interference by government officials sufficient to make compliance impracticable, would constitute acceptable cause for federal habeas review of the defaulted claim. *Werts v. Vaughn*, 228 F.3d 178, 193 (3d Cir. 2000)(citing *Murray*, 477 U.S. at 488).   A claim of ineffective assistance of counsel has been deemed by the Supreme Court to fall within this standard.   *Id.*   The exhaustion doctrine generally requires, however, that an ineffective-assistance claim "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id.* (citing *Murray* at 488-89).   With regard to the prejudice requirement, the habeas petitioner must prove "not merely that the errors at … trial created a

13

possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494.

As stated, a federal court may also excuse procedural default when its failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger*, 266 F.3d at 224. The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

More recently, the United States Supreme Court added a wrinkle to the procedural default analysis. In *Martinez v. Ryan*, the Arizona State courts expressly prohibited prisoners from raising ineffective-assistance-of-trial-counsel claims on direct appeal, and the Court held: "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review proceeding, there was no counsel or counsel in that proceeding was ineffective." 132 S.Ct. at 1320. What the Supreme Court termed "initial-review collateral proceedings" are collateral proceedings that "provide the first occasion to raise a

14

claim of ineffective assistance at trial." *Id.* Thus, the Court created a narrow exception to the rule set forth in *Coleman*, 501 U.S. at 753–54, that an attorney's errors in a postconviction collateral proceeding do not constitute cause to excuse a procedural default. *Martinez*, 132 S.Ct. at 1315. The Court declined to hold, however, that there is a constitutional right to counsel in initial-review collateral proceedings. *Id.*

The Court further summarized two situations in which its holding is applicable:

> The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

*Id.* at 1318. Then, in 2013, the Supreme Court decided *Trevino v. Thaler*. In *Trevino*, the Texas State courts precluded prisoners as a matter of course from raising ineffective-assistance-of-trial counsel claims on direct appeal. In finding no significant differences between the Texas and Arizona judicial systems, the Supreme Court extended the *Martinez* holding to states maintaining a procedural framework, where, by reason of design and operation, it is highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of

ineffective assistance of trial counsel on direct appeal.   133 S.Ct. 1911, 1921 (2013).

While Pennsylvania requires, "as a general rule, [that] a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review," *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002), the Commonwealth has recently recognized two exceptions to the general rule that fall within the discretion of the trial judge, *Commonwealth v. Holmes*, 79 A.3d 562 (Pa. 2013).  In light of these recent exceptions carved out by the Supreme Court of Pennsylvania, it would appear that the *Martinez* holding would not be applicable to Pennsylvania prisoners, because there is, in effect, no express ban on the ability of a petitioner to raise an ineffective-assistance-of-trial-counsel claim on direct appeal.   *Trevino*, however, appears to ensure that the *Martinez* holding is applicable to Pennsylvania prisoners, and it will be applied herein.

Thus, in order to overcome a procedural default pursuant to *Martinez*, a Pennsylvania state prisoner must show that he or she was not appointed counsel on initial-review collateral proceedings or that his or her appointed counsel was ineffective.   In addition, he or she "must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 133 S.Ct. 1318; *accord id.* at 1319 ("[A] State may answer that the ineffective-

assistance-of-trial-counsel claim is insubstantial, *i.e.*, it does not have any merit or that it is wholly without factual support . . . ."); *see Cook v. Ryan*, 688 F.3d 598, 610 (9th Cir. 2012)("*Martinez* requires that a petitioner's claim of cause for a procedural default be rooted 'in a potentially legitimate claim of ineffective assistance of trial counsel.'")(quoted case omitted); *see also Glenn v. Wynder*, 743 F.3d 402 (3d Cir. 2014)(finding petitioner's ineffective-assistance-of-trial-counsel claims to be insubstantial under *Martinez*).

### B. Scope of Merits Review.

In light of the aforementioned rules governing the review of federal habeas petitions, it is clear that only federal claims that have been properly exhausted and are not otherwise procedurally defaulted may be addressed on the merits. Following the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the standard of review for cases challenging convictions *via* 28 U.S.C. § 2254 was revised. *Dickerson v. Vaughn*, 90 F.3d 87, 90 (3d Cir. 1996). Pursuant to § 2254, federal courts collaterally reviewing exhausted claims from state proceedings are now required to afford considerable deference to state courts' legal and factual determinations. *Lambert v. Blackwell*, 387 F.3d 210, 234 (3d Cir. 2004). While demanding and often difficult to meet, *Metrish v. Lancaster*, 133 S.Ct. 1781, 1786 (2013), this level of deference is not insatiable. As the Supreme

Court recognized in *Miller-El v. Cockrell*: "Deference does not by definition preclude relief." 537 U.S. 322, 340 (2003).

    With respect to its express terms, AEDPA provides the following:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  In addition, "a determination of a factual issue made by a State court shall be presumed to be correct" unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

    The Supreme Court interpreted § 2254(d)(1)'s deference to a state's legal determinations in *Williams v. Taylor*, 529 U.S. 362 (2000). The Court interpreted the phrase "clearly established Federal law, as determined by the Supreme Court of the United States," to mean "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions *as of the time of the relevant state-court decision*." *Id.* at 412 (emphasis added); *Greene v. Palakovich*, 606 F.3d 85, 106 (3d Cir. 2010).

18

Further, a state-court decision is "contrary to" clearly established federal law if the state court (1) "contradicts the governing law set forth in [the Supreme] Court's cases" or (2) "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result." *Williams*, 529 U.S. at 405–06.

A state-court decision "involve[s] an unreasonable application" of clearly established federal law if the State court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case." *Id.* at 407; *see White v. Woodall*, 134 S.Ct. 1697, 1706 (2014)(expressly rejecting the "unreasonable-refusal-to-extend" rule in defining the scope of § 2254(d)(1)'s deference standard).  In other words, relief is available under the "unreasonable-application" clause "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question…." *White*, 134 S.Ct. at 1706 (cited case omitted).  Thus, "[federal courts] will not surmise whether the state court reached the best or even the correct result in [a] case; rather, we [must] determine only 'whether the state court's application of [federal law] was unreasonable.'" *Rountree v. Balicki*, 640 F.3d 530, 538 (3d Cir. 2011) (quoting *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)); *Williams*, 529 U.S. at 411.

Additionally, the Supreme Court addressed AEDPA's factual review provisions in *Miller–El*. There, the Supreme Court interpreted § 2254(d)(2) to mean that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." 537 U.S. at 340. Yet, as mentioned, the Court cautioned that "deference does not imply abandonment or abdication of judicial review." *Id.* Thus, a federal habeas court can "disagree with a state court's credibility determination." *Id.*; *see also Wiggins v. Smith*, 539 U.S. 519 (2003) (rejecting state court's factual determination under § 2254(e)(1) and 2254(d)(2)).

Despite the Supreme Court's pronouncements in *Miller–El* and *Wiggins*, a comprehensive interpretation of AEDPA's factual review scheme has not emerged from the federal courts. *Lambert*, 387 F.3d at 235; *see Eley v. Erickson*, 712 F.3d 837, 846 n. 11 (3d Cir. 2013)(noting that the Supreme Court has "explicitly left open the question whether § 2254(e)(1) applies in every case presenting a challenge under § 2254(d)(2)")(quoting *Wood v. Allen*, 558 U.S. 190 (2010)).  In other words, the relationship between the standards enunciated in § 2254(d)(2) and § 2254(e)(1) remains unclear.  *Lambert*, 387 F.3d at 235 (citing *Green v. White*, 232 F.3d 671, 672 n. 3 (9th Cir. 2000)).  "Courts have tended to lump the two provisions together as generally indicative of the deference AEDPA requires of

20

state court factual determinations." *Id.* (citing *Martini v. Hendricks*, 348 F.3d 360, 363 (3d Cir. 2003); *Hunterson v. DiSabato*, 308 F.3d 236, 245–46, 249–50 (3d Cir. 2002)).   The Third Circuit, however, has provided some guidance by reading § 2254(d)(2) and § 2254(e)(1) together as addressing two somewhat different inquiries:

> The fundamental prerequisite to granting the writ on factual grounds is consideration of the evidence relied upon in the state court proceeding. Section 2254(d)(2) mandates the federal habeas court to assess whether the state court's determination was reasonable or unreasonable given that evidence.  If the state court's decision based on such a determination is unreasonable in light of the evidence presented in the state court proceeding, habeas relief is warranted.
>
> Within this overarching standard, of course, a petitioner may attack specific factual determinations that were made by the state court, and that are subsidiary to the ultimate decision. Here, section 2254(e)(1) comes into play, instructing that the state court's determination must be afforded a presumption of correctness that the petitioner can rebut only by clear and convincing evidence. In this inquiry, a petitioner may develop clear and convincing evidence by way of a hearing in federal court as long as he satisfies the necessary prerequisites. *See* 28 U.S.C. § 2254(e)(2).  In the final analysis however, even if a state court's individual factual determinations are overturned, what factual findings remain to support the state court decision must still be weighed under the overarching standard of section 2254(d)(2).

*Lambert*, 387 F.3d at 235-36.

Furthermore, other federal courts have explained that, like the "unreasonable application" prong of paragraph (d)(1), a factual determination should be adjudged

21

"unreasonable" under paragraph (d)(2) only if a court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); *Porter v. Horn*, 276 F.Supp.2d 278, 296 (E.D. Pa. 2003); *see also Torres v. Prunty*, 223 F.3d 1103, 1107–08 (9th Cir. 2000).  More precisely, only when the finding lacks evidentiary support in the State court record or is plainly controverted by evidence therein should the federal habeas court overturn a State court's factual determination.  *Porter*, 276 F.Supp.2d at 296; *see also Williams*, 529 U.S. at 408–09.

### C. Ineffective Assistance of Counsel.

In addition to the aforementioned rules and legal standards governing habeas corpus cases filed in federal court, we provide here the well-established legal standard for ineffective-assistance-of-counsel claims.  In general, these claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984), where the Supreme Court enunciated a two-prong test.  First, the petitioner must show that counsel's performance fell below an objective standard of reasonableness, 466 U.S. at 688, and, second, the petitioner must show he was actually prejudiced by counsel's deficient performance. *Id.* at 687.  A petitioner asserting an ineffectiveness claim must prove both elements in order for the court to conclude that the conviction is unreliable. *Id.; Bell v. Cone*, 535 U.S. 685, 695 (2002).  But, a "court need not determine whether counsel's performance was deficient before examining the

prejudice suffered by the [petitioner] as a result of the alleged deficiencies."

*Strickland*, 466 U.S. at 697.

With respect to the first prong, the Supreme Court proffered the following:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 689.   Thus, when deciding an ineffectiveness claim, the reasonableness of counsel's conduct must be judged in light of the facts of the particular case at the time the conduct occurred.   *Id.* at 690.   Given the strong presumption of reasonableness, "substantial deference is to be accorded counsel's tactical decisions." *United States v. Wiener*, 127 F. Supp. 2d 645, 648 (M.D. Pa. 2001). Likewise, counsel cannot be deemed ineffective for failing to pursue meritless claims or objections.   *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999); *United States v. Fulford*, 825 F.2d 3, 9 (3d Cir. 1987).

Turning to the second prong, the petitioner must establish that counsel's deficient performance prejudiced the defense.   *Strickland*, 466 U.S. at 687.   In establishing prejudice, "[the petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

23

would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.  In ruling on this prong, "[t]he effect of counsel's inadequate performance must be evaluated in light of the totality of evidence at trial: a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."  *Grant v. Lockett*, 709 F.3d 224, 235 (3d Cir. 2013)(internal quotations and cited cases omitted).

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).  On habeas review, the task is even more daunting; though, still not impossible.  As explained in *Richter*:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ——, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ——, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

131 S.Ct. at 788.

**III.    Discussion of Grounds 1, 3-6, 8, and Consolidated Grounds 11-12.**

Applying these legal principles, we recommend that: (1) a portion of Ground 1, Grounds 3 & 5, and a portion of Consolidated Grounds 11-12 be denied on the merits; and (2) the remaining Grounds (i.e. a portion of Ground 1, a portion of Consolidated Grounds 11-12, and Grounds 4, 6, 8, and 13) be deemed procedurally defaulted.  We address Grounds 8 and 13 in a separate section to follow - Part IV.

**A. Ground 1: Ineffective assistance of trial counsel for not objecting to the Commonwealth's use of Gibson's post-arrest silence.**

Gibson argues that trial counsel was ineffective for failing to object to the prosecutor's references to his post-arrest silence and the prosecutor's use of post-arrest silence as substantive evidence of guilt.  As discussed, *infra*, we recommend that the Court deny Ground 1, in part, on the merits and otherwise find that the Ground is procedurally defaulted.

In reviewing the prosecutor's comments during closing argument, the Pennsylvania Superior Court concluded that there was no error and adopted the PCRA Court's Rule 1925 opinion as its own.  *Doc.* 14-17 at 6.  Furthermore, the Supreme Court of Pennsylvania denied Gibson's petition for allowance of appeal without issuing an opinion.  Thus, accepting the PCRA Court's factual findings as correct, per 28 U.S.C. § 2254(e)(1), the PCRA court ruled as follows:

[Gibson] next states that [trial counsel] was ineffective for failing to object to the Commonwealth's reference to his post-arrest silence. While the Court is well versed in [Gibson's] Constitutional right to remain silent, it is obvious to us that the Commonwealth was simply responding to the defense theory that had been established by the defense in its closing remarks. [Gibson's] counsel had commented in his closing that, in *voir dire*, he had discussed his self-defense theory. The Commonwealth was only refuting [Gibson's] self-defense theory with its statement. Therefore, as the comments made by the Commonwealth were not improper, [trial counsel] had nothing to object to and cannot be found to be ineffective for failing to do so. This is, again, another meritless claim and should be dismissed.

*Doc.* 14-15 at 13.[3]

---

[3]    The PCRA court stated the correct legal standard, pursuant to *Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001). *Doc.* 14-15 at 8-9. In *Pierce*, the Supreme Court of Pennsylvania explained that:

> The standard for proving ineffective assistance of counsel is well settled. Appellant must prove: (1) that the underlying claim is of arguable merit; (2) that counsel's performance lacked a reasonable basis; and (3) that the ineffectiveness of counsel caused him prejudice. *Commonwealth v. Miller*, 560 Pa. 500, 746 A.2d 592, 598 (2000). Prejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326, 332 (1999).

*Pierce*, 786 A.2d at 213; *see also Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000)(concluding that Pennsylvania's standard comports with the standard set forth by the Supreme Court in *Strickland*).

Gibson contends that this ruling is contrary to *Doyle v. Ohio*[4] and *Strickland*, or alternatively, an unreasonable application of the latter. *Doc.* 24 at 17.

At the outset, we find that the PCRA Court's ruling was not contrary to *Doyle*, a case consistently explained as one where the government had induced silence by implicitly assuring the defendant that his silence would not be used against him. There, the defendants, after being arrested for selling marijuana, received their *Miranda*[5] warnings and chose to remain silent. At their trials, both took the stand and claimed that they had not sold marijuana, but had been "framed." 426 U.S. at 613. To impeach the defendants, the prosecutors asked each why he had not related this version of events at the time he was arrested. Based on the prosecutor's questions, the Supreme Court held that the defendants' due process rights were violated at trial because the *Miranda* warnings contain an implicit "assurance that silence will carry no penalty." *Id.* at 618.

In the case *sub judice*, the State court record demonstrates that in rebuttal to Gibson's closing argument on self-defense (*see Doc.* 14-7 at 31-40), the prosecutor stated, "the first time that you heard even a word about self-defense with respect to [Gibson] was this afternoon" and added, "[f]our and a half days into trial, [Gibson] gets on the stand. That is when we hear self-defense." *Doc.* 14-7 at 42, 43. Viewed

---

[4]   426 U.S. 610 (1976).

[5]   *Miranda v. Arizona*, 384 U.S. 436 (1966).

in context, the challenged statements "simply set forth a consideration the jury was to have in mind when assessing [Gibson's defense and] credibility, which, in turn, [likely] assisted it in determining [Gibson's guilt]." *Portuondo v. Agard*, 529 U.S. 61, 71 (2000).[6]  In other words, the prosecutor was permissibly rebutting Gibson's theory of the case by apparently calling the jury's attention to the fact that Gibson had the opportunity to hear all the other witnesses testify and to tailor his defense accordingly.  *Id.* at 63, 69.  Indeed, there was no comment on Gibson's failure, post-arrest, to relate his self-defense theory after being *Mirandized*.[7]  The PCRA Court's ruling, therefore, was not contrary to *Doyle*.  Similarly, pursuant to this line of argument and legal theory, in addition to the application of the proper legal standard, the PCRA Court's ruling was neither contrary to, nor an unreasonable application of, *Strickland*.  Without a finding of error, trial counsel had nothing to object to; thus, he cannot be considered to have acted deficiently.

This does not completely settle Ground 1.  In addition to claiming that trial counsel was ineffective for not objecting to the prosecutor's comments about his post-arrest silence during closing arguments, Gibson also claims that trial counsel

---

[6]     Although the Supreme Court mentioned that *Doyle* might need to be reconsidered, *Portuondo*, 529 U.S. at 74, it remains good law; however, as discussed herein, it is not applicable to Gibson's case.

[7]     The respondent notes that the record is silent as to whether Gibson was *Mirandized*.  *Doc.* 14-2 at 8.  We, however, do not have the full State court record in front of us to make such a determination.  Moreover, it does not appear that the PCRA Court made a factual determination that Gibson had not been *Mirandized*.

was ineffective for failing to object to certain questions propounded to Gibson on cross-examination that impliedly gave the jury the impression that Gibson manufactured his defense at the time of trial. *See Doc.* 24 at 16. Gibson, though, did not describe or challenge the questions propounded to him on cross-examination when he presented his ineffective-assistance-of-trial counsel claim to the State courts. Under the circumstances, therefore, Gibson failed to exhaust this portion of Ground 1. *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004)(holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion, that does so."); *see also Nara*, 488 F.3d at 197-98 (citing *Duncan v. Henry*, 513 U.S. 364, 366 (1995)(per curiam) for the proposition that a petitioner has fairly presented his claim if he presented the same factual and legal basis for the claim to the State courts); *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1231 (3d Cir. 1992)(fair presentation "requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts. Both the legal theory and the facts underpinning the federal claim must have been presented to the state courts, and the same method of legal analysis must be available to the state court as will be employed in the federal court."). Moreover, requiring Gibson to go back to the State courts would be futile since he is clearly foreclosed from

bringing this unexhausted claim in State court.  *See Commonwealth v. Ali*, No. 667 CAP, 2014 WL 594330, at *3 (Pa. Feb. 18, 2014)("A PCRA petition, including a second or subsequent petition, must be filed within one year of the date that judgment of sentence becomes final.")(citing 42 Pa. C.S. § 9545(b)(1)).  Thus, this portion of Ground 1 should be deemed procedurally defaulted absent a showing of cause and prejudice or a fundamental miscarriage of justice.[8]

In Gibson's supplemental brief, he argues that the procedural default should be excused pursuant to *Martinez v. Ryan*, *supra*, because PCRA counsel was ineffective for not raising this issue, which Gibson believes has merit.  *Doc.* 34 at 12.[9]  We find, however, that the underlying ineffective-assistance-of-trial-counsel claim is insubstantial; therefore, Gibson cannot overcome the procedural default.

At trial, the following dialogue took place on cross-examination between Gibson and the prosecutor:

---

[8]     Respondent did not raise the procedural default defense in his answer. Nevertheless, pursuant to *Sweger v. Chesney*, 294 F.3d 506, 521-22 (3d Cir. 2002), we raised it *sua sponte* and required the parties to address this issue in supplemental briefs.  *Docs.* 34 & 35.

[9]     Specifically, Gibson contends that he raised this issue in his *pro se* PCRA petition, but when PCRA counsel amended the petition, the claim was excluded. *Id.* at 11-12.  According to Gibson, however, he never advised PCRA counsel to file an amended petition and the PCRA Court's order, appointing counsel, was limited to counsel's handling of the evidentiary hearing.  *Id.*; *Doc.* 34-1.

Q. Do you remember earlier today when [Williams], your step-brother, testified?

A. Yes, I do.

Q. Do you remember him testifying about a stabbing incident that involved Hassan Babil?

A. Yes, I do.

Q. Do you remember him being cross-examined about saying in front of the [grand jury] that he wasn't there?

A. I have nothing to do with that. I really don't know what you're saying.

Q. Do you remember him testifying about that?

A. And saying what?

Q. That he wasn't even there when Hassan Babil's stabbing occurred…?

****

Q. You weren't even paying attention?

A. I was paying attention, but as to every answer he gave, I don't know all of them.

Q. You paid attention enough to hear him testify today that Oh, no, this was self-defense?

****

Q. Do you remember sitting here during the course of [jury selection], during and after the striking of the jurors whispering [with Williams]?

****

Q. Do you remember sitting here whispering back and forth with [Williams]?

A. Yes.

Q. Talking?

A. Yes.

****

Q. You weren't talking about the case?

A. No, we weren't.

Q. You weren't talking about defenses to your charges?

A. No, we weren't.

*Doc.* 14-6 at 39-42.  Gibson's trial counsel never raised an objection.  Moreover, following this dialogue, the prosecutor confronted Gibson with eyewitness testimony.  *Id.* at 42-43.  Gibson further testified that he lost the gun fleeing the scene and, two days after the shooting, started heading South before also losing his cell phone that he had been using to make phone calls back to Harrisburg, Pennsylvania.  *Id.* at 43-48.

Just like the prosecutor's statements during closing argument, not once did the prosecutor on cross-examination reference Gibson's failure to relate his self-defense theory post-arrest, following the issuance of *Miranda* warnings.  Instead, as before, the prosecutor appears to have been attacking Gibson's credibility as a witness, which is permitted.  *See Portuondo, supra.*  Gibson, consequently, cannot

show that any failure by his trial counsel to raise an objection was "objectively unreasonable," much less that he was prejudiced pursuant to the commands of *Strickland*.   Consequently, this underlying claim of ineffective assistance of trial counsel is insubstantial under *Martinez*, and this portion of Ground 1 should be considered procedurally defaulted.

## B. Ground 3: Ineffective assistance of trial counsel for not conducting a reasonable investigation.

According to Gibson, trial counsel provided ineffective assistance by "failing" to investigate Brown's criminal history, which would have been relevant to buttress Gibson's self-defense claim.   Specifically, Gibson focuses on trial counsel's inability to discover criminal charges that were filed against Brown prior to Gibson's trial.

On PCRA appeal, the Pennsylvania Superior Court concluded that there was no error in the PCRA Court's ruling and adopted the Rule 1925 opinion as its own. *Doc.* 14-17 at 6.   Furthermore, the Supreme Court of Pennsylvania denied Gibson's petition for allowance of appeal without issuing an opinion.   The PCRA Court, in the Rule 1925 opinion, ruled accordingly:

> [Trial counsel] did investigate Jason Brown's background and was unable to find the information that [Gibson] had alleged. [Trial counsel] would have no basis bringing Jason Brown's charges, which were dismissed [for lack of evidence] at a Preliminary Hearing held before this Court on October 7, 2004, to the jury's attention.   Nevertheless, the jury was provided with Brown's colorful past, including his previous convictions

33

> regarding violence. While this Court sustained the
> Commonwealth's objection when [trial counsel] tried to establish
> that Brown had committed violent acts in the past, [trial counsel]
> was still able to illicit testimony that Brown had been involved in
> violent crimes …. Therefore, [Gibson] has failed to show that he
> was prejudiced by [trial counsel's] failure to disclose Jason
> Brown's dismissed charges to the jury.  Thus, we find this issue
> to be without merit.

*Doc.* 14-15 at 10-11.  Gibson, however, contends that this decision is based upon

an unreasonable determination of the facts in light of the evidence presented and

upon an unreasonable application of *Strickland*.  *Doc.* 24 at 24-25.  We disagree.

Gibson testified at trial that before he shot the victim, he made eye contact

with Brown, who then turned to another individual and said, "[s]how this nigger or

these niggers that they bleed like us." *Doc.* 14-6 at 11.  Then, according to Gibson,

the individual to whom Brown was talking started reaching for what looked like a

gun. *Id.* at 12-13.  At that moment, Gibson testified that he defended himself by

pulling his own gun and firing multiple shots. *Id.* at 13.

When asked why he felt endangered, Gibson mentioned the comment that he

heard Brown make.  Additionally, Gibson testified that he knew Brown for 10

years and personally observed Brown "stomp" someone to the point of physical

injury. *Id.* at 18.  Trial counsel further inquired about Brown having already

admitted to being involved with Williams in a "gun-play incident"[10], *see id.*, and the parties had stipulated to Brown's prior record, which included convictions for assault and resisting arrest.  *Doc.* 14-13 at 22, 34-35.  Moreover, trial counsel cross-examined Brown about his *crimen falsi* and any benefits that he might have received in exchange for testifying as a prosecution witness.  *See id.* at 28.

In addition, Gibson's trial counsel testified at the first PCRA hearing that he did not recall a lot of information about Gibson's case; however, he did remember that approximately 20 days before trial, Gibson first brought up that he acted in self-defense.  *Doc.* 14-12 at 15, 17-18.  Gibson was also supposed to provide trial counsel with names of individuals to investigate, but trial counsel claimed that Gibson never provided any helpful information.   *Id.* at 17-18.   In the end, however, the PCRA Court scheduled a second hearing because it was not satisfied with any of the witnesses' level of preparation.  *See id.* at 71-72.  *Doc.* 14-13 at 21.

In March 2010, at the second PCRA hearing, Gibson's trial counsel testified that upon further review of his case file, he did, in fact, investigate Brown's criminal history.  Specifically, trial counsel testified that after he learned about Gibson's desire to raise self-defense, he ran Brown's name through the Commonwealth's court files but found nothing about any new criminal charges

---

[10]    It is unclear from the record what precisely this means; however, it is presumed that it is a phrase referring to an argument involving the use, or possession, of a gun.

that had been filed.  *Doc.* 14-13 at 21-22, 23.  Trial counsel, though, had a certified document on Brown in his files that was dated after Gibson had decided to change trial strategy.  *Id.* at 31.[11]

Despite trial counsel's testimony that he did not discover Brown's criminal charges that were filed after Gibson's arrest, Gibson's PCRA counsel tendered a copy of the docket sheet in Brown's case.  *See id.* at 3, 22-23.  According to the docket sheet, Brown had been charged with aggravated assault, recklessly endangering another, several gun charges, and attempted homicide.  *See id.* at 22-23.  Those same charges, however, had been dismissed at a preliminary hearing for lack of evidence, nearly one year before Gibson went to trial.  *Id.* at 36-38; *Doc.* 9 at 67.

In light of the record presented, the State court's decision was not based on an unreasonable determination of the facts.  A rational jurist could reach the same findings on the basis of the evidence in the record; namely, that trial counsel attempted to investigate Brown's criminal charges to no avail, that Brown's criminal charges were dismissed nearly a year before Gibson's trial, and that the jury heard evidence of Brown's violent criminal past including evidence of a gun-play incident involving Williams.

---

[11]   It is unclear what was on the certified document in trial counsel's file.

Next, accepting the PCRA Court's factual findings as correct per §
2254(e)(1), Gibson fails to show that the State court's decision was an
unreasonable application of *Strickland*.   Although "counsel has a duty to make
reasonable investigations or to make a reasonable decision that makes particular
investigations unnecessary," *Strickland*, 466 U.S. at 691, the evidence here
reasonably demonstrates that Gibson's trial counsel investigated Brown's criminal
history.   Unfortunately, for whatever reason, trial counsel did not uncover Brown's
criminal charges.   Nevertheless, the jury heard about Brown's prior convictions, a
gun-play incident involving Williams, and Gibson witnessing Brown violently
attacking another individual.   Still, the jury rendered a guilty verdict.   The PCRA
Court, thus, appears to have concluded that evidence of Brown's dismissed
criminal charges would have been merely cumulative, preventing Gibson from
showing that he was prejudiced.   In light of the record, such a theory is not
unreasonable, because it cannot be said that there was a reasonable probability that
the outcome would have been different, especially, whereas here, Brown's charges
were dismissed for a lack of evidence.   Ground 3, therefore, should be denied.

### C. Ground 4: Ineffective assistance of trial counsel for not objecting to the trial court's decision to disallow certain self-defense evidence.

In his PCRA petition, Gibson claimed that *appellate* counsel was ineffective
for failing to argue on appeal that the trial court erred in disallowing testimony
about his knowledge that Brown was wanted for the shooting of his (i.e. Gibson's)

brother at the time of the underlying events.  *See Doc.* 14-15 at 13-14.  The PCRA

Court ultimately denied this Ground on the basis that the evidence Gibson sought

to introduce at his criminal trial was inadmissible hearsay, and Gibson was not

otherwise prejudiced under the *Strickland* standard.  *Id.*

On appeal, the Pennsylvania Superior Court affirmed the denial of this

Ground, but on a different basis.  Specifically, the Superior Court concluded that

the trial court had erred in excluding Gibson's testimony; however, Gibson "ha[d]

not demonstrated a fair probability that the outcome … *at trial* or on appeal would

have been different if *counsel* had challenged the trial court's evidentiary ruling."

*Doc.* 14-17 at 7-8 (emphasis added).  The Superior Court premised its ruling upon

the fact that the jury had heard testimony from Gibson regarding instances in

which he had personally observed Brown commit violent acts, and other witnesses

testified about violent episodes in which Brown was similarly involved.  *Id.* at 8.

In other words, the Superior Court reasoned that the evidence Gibson complains

about here was cumulative.  *Id.*

In his federal habeas petition, Gibson initially raised the same ineffective-

assistance-of-appellate-counsel claim that he raised in the State courts.  In addition,

Gibson also initially raised an underlying ineffective-assistance-of-counsel claim

against trial counsel for not objecting to the trial court's exclusion of the self-

defense evidence.  *Doc.* 1 at 14.  Once counsel was appointed in this action,

however, Gibson withdrew his claim against appellate counsel, but is proceeding on his claim against trial counsel. *Doc.* 24 at 25 n. 1.

At first glance, it would appear that Gibson's ineffective-assistance-of-trial-counsel claim was not fairly presented to the State courts. *See Baldwin, supra*, 541 U.S. 27 (petitioner did not exhaust a federal claim of ineffective assistance of appellate counsel under the circumstances presented although petitioner had exhausted a claim of ineffective assistance of trial counsel); *Au v. Buss*, No. 2:11-CV-103, 2014 WL 842446, at *11 (M.D. Fl. Mar. 4, 2014)(concluding that petitioner's ineffective-assistance-of-trial-counsel claim was unexhausted and procedurally defaulted despite the fact that the petitioner had raised a similar claim against appellate counsel in State court proceedings); *Aytch v. LeGrand*, No. 3:10-CV-00767-RCJ, 2013 WL 1326488, at *12 (D. Nevada Mar. 29, 2013)(same); *cf. Collins v. Secretary of Penn. Dept. of Corrections*, 742 F.3d 528, 541 (3d Cir. 2014)(petitioner's ineffective-assistance-of-trial counsel claim was exhausted where petitioner layered said claim with a claim of ineffective assistance of appellate counsel).  In reaching the merits of the ineffective-assistance-of-appellate-counsel claim, however, the Superior Court of Pennsylvania appears to have addressed the merits of the ineffective-assistance-of-trial-counsel claim that is being raised in Gibson's federal habeas petition.  Accordingly, this claim should

not be deemed unexhausted or procedurally defaulted, and should similarly be addressed on the merits, under the AEDPA deference standards.

In this respect, the record presented to the State court demonstrates that the jury heard evidence about Brown's propensity for violence, his prior violent acts and convictions, and his involvement with Williams in a gun-play incident. Additionally, Gibson testified that he thought he had seen a gun, he heard Brown make a suggestive statement immediately before the shooting, and saw Brown commit a violent act on another individual that resulted in physical injury. *Doc.* 14-6 at 11, 13, 15, 17-18. The jury, nonetheless, obviously rejected Gibson's self-defense theory and rendered a guilty verdict. On these facts, there is, indeed, no reasonable probability that the result of the proceeding would have been different if trial counsel had objected or that the ruling was based upon an unreasonable determination of the facts; instead, the evidence that Gibson complains about was merely cumulative of the evidence presented to the jury. Ground 4, consequently, should be denied.

### D. Ground 5: Due Process violation pursuant to *Brady v. Maryland*.[12]

As discussed herein, the gravamen of Gibson's trial strategy was that he had a legitimate fear for his life, which was based in large part on the actions and statements of Brown and on Gibson's knowledge of Brown's history of violence.

---

[12]   373 U.S. 83 (1963).

*Doc.* 24 at 27-28.   Gibson argues, therefore, that the prosecution's partial disclosure of Brown's criminal record constitutes a due process violation pursuant to the *Brady* Rule.   *Id.* at 28.

In reviewing this issue during Gibson's PCRA appeal, the Pennsylvania Superior Court concluded that there was no error.   *Doc.* 14-17 at 6.   In so concluding, the Superior Court adopted the PCRA court's Rule 1925 opinion, which stated:

> Under [principles of fairness, Gibson] suffered no prejudice because he was able to confront Jason Brown and illicit testimony directly from him.   Furthermore, the evidence that [Gibson] sought was not favorable to him, as Jason Brown's charges were dismissed concerning that particular incident for lack of evidence and would not have substantiated the claim that he was a violent individual.   Consequently, this claim is meritless and should also be dismissed.

*Doc.* 14-15 at 15-16.   Gibson contends that this ruling was based on an unreasonable determination of the facts in light of the record presented and was also an unreasonable application of *Brady*.   *Doc.* 24 at 29.

In *Brady v. Maryland*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused … violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."   373 U.S. 83, 87 (1963); *United States v. Agurs*, 427 U.S. 97 (1976)(*Brady* applies even in the absence of a request for evidence by the accused).   "[The *Brady* Rule's] purpose is not to displace the adversary system

as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur." *United States v. Bagley*, 473 U.S. 667, 675 (1985).  In order to establish a *Brady* violation, the petitioner must show that (1) the government withheld evidence, either willfully or inadvertently; (2) the evidence was favorable, either because it was exculpatory or of impeachment value; and (3) the withheld evidence was material.  *See Banks v. Dretke*, 540 U.S. 668 (2004); *Giglio v. United States*, 405 U.S. 150 (1972)(holding that impeachment evidence falls within the *Brady* rule); *Marshall v. Hendricks*, 307 F.3d 36, 52 (3d Cir. 2002); *United States v. Perdomo*, 929 F.2d 967, 970 (3d Cir. 1991).

Under *Brady*, the standard for materiality is the functional equivalent of the prejudice standard iterated in *Strickland*.  *Bagley*, 473 U.S. at 682; *Marshall*, 307 F.3d at 53.  As the United States Supreme Court summarized:

> [The] touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995); *Marshall* 307 F.3d at 53.  Importantly, the Supreme Court has instructed that in making a determination regarding

materiality, the reviewing court must consider the cumulative effect of all the suppressed information. *Kyles*, 514 U.S. at 436-37.

At trial, Gibson stipulated to Brown's criminal record, which did not include any mention of the criminal charges that had been dismissed a year before Gibson's trial. According to Gibson, evidence of Brown's dismissed criminal charges was favorable because it would have corroborated his self-defense theory, especially where he believed that Brown was charged with shooting his brother. Thus, Gibson argues that the prosecution's failure to disclose the dismissed criminal charges violated his due process rights under the *Brady* rule.

Brown's dismissed criminal charges that Gibson complains about, though, were dismissed for a lack of evidence and, therefore, did not substantiate Brown's violent character. Moreover, Gibson provides no evidence here that Brown received favorable treatment by the prosecution in exchange for his testimony (i.e. impeachment evidence). Furthermore, Gibson had the opportunity to cross-examine Brown and inquire about his criminal record. As well, the jury heard from Gibson's step-brother, Williams, who testified about a gun-play incident involving Brown, which gave the jury insight into Brown's character. *See Doc.* 14-6 at 18. Yet, the jury still rendered a guilty verdict.

In light of the record presented, it is apparent that evidence of Brown's dismissed criminal charges was merely cumulative of the other evidence presented

to the jury with respect to Brown's character traits and criminal history.   In other words, the evidence was not material, meaning that the PCRA Court's ruling is not unreasonable in any respect.   As a result, Ground 5 should be denied.

### E. Ground 6: Ineffective assistance of trial counsel for not objecting to the prosecutor's statements during closing argument that shifted the burden of proof.

Gibson has not fairly presented this Ground to the State courts.   As such, it has not been properly exhausted, and requiring Gibson to go back to the State courts would be futile since he is clearly foreclosed from bringing this unexhausted claim there.   *See Ali*, *supra*, 2014 WL 594330, at *3.   As a result, Ground 6 should be deemed procedurally defaulted absent a showing of cause and prejudice, or a fundamental miscarriage of justice.[13]

In an attempt to overcome the procedural default, Gibson maintains the same argument as before: the procedural default should be excused pursuant to *Martinez v. Ryan*.   *See Doc.* 34 at 7-8.   Once again, however, we find that the underlying ineffective-assistance-of-trial-counsel claim is insubstantial.

In the underlying ineffective-assistance-of-trial-counsel claim, Gibson contends that trial counsel should have objected to the following comments made by the prosecutor during closing argument:

---

[13]     Respondent did not raise the procedural default defense in his answer. Nevertheless, per *Sweger*, we raised it *sua sponte* and required the parties to address this issue in supplemental briefs.   *Docs.* 34 & 35.

> Well, let's look for independent sources corroborating [Gibson's] story of self defense. Is there anybody you heard from, any of the witnesses at the scene who corroborated [Gibson's] story of self defense? A soul living or dead.
>
> ****
>
> I look at the ledger of witnesses, identifying this shooting as the way it happened. I look on the other side and all I see is [Gibson]. I have nothing written, but it is [Gibson] on the other side. [Gibson's] self defense story of, I put my hand up, I take the gun, I start shooting – bang, bang – people I don't know, a fight I don't know about, and I just happen to hit them [in the] bulls' eye ….

*Doc.* 14-7 at 61-62, 63. Gibson's trial counsel did not raise an objection to these statements. *Id.*

It is well-established that "[a] prosecutor who wishes to argue in summation that the government's evidence has been largely uncontradicted must walk a fine line." *United States v. Parker*, 903 F.2d 91, 98 (2d Cir.), *cert. denied*, 498 U.S. 872 and 874 (1990). She is normally entitled to comment on a defendant's failure to call witnesses in order to contradict the factual character of the government's case, as well as his failure to support his own factual theories with witnesses. *Id.* (quoted case omitted). However, "the prosecution may not comment on a defendant's failure to testify and may not improperly suggest that the defendant has the burden to produce evidence." *United States v. Balter*, 91 F.3d 427, 441 (3d Cir. 1996)(citing *Parker*, *supra*, 903 F.2d at 98). In order to obtain reversal of a conviction on the ground that the prosecutor crossed the boundary between

permissible and impermissible argument, a defendant must show substantial prejudice. *See Parker*, *supra*, 903 F.2d at 98-99. Furthermore, as a general matter, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements … must be viewed in context." *United States v. Young*, 470 U.S. 1, 10 (1985).

Here, immediately after the prosecutor asked the jury whether it heard from any corroborating witnesses, he proceeded to state: "Now remember, there is no burden of proof on their side. They don't have any burden to bring anybody in, but, you did hear from a number of people who were there." *Doc.* 14-7 at 61. Then, the prosecutor discussed the eyewitness testimony with the jury, emphasizing that none of the eyewitnesses supported Gibson's self-defense theory. *See id.* at 61-64. Thereafter, the prosecutor made the comment about the "ledger of witnesses."

Taken in context, "[w]hile the form of the argument … may have suggested to the jury that [Gibson] had failed to fulfill some obligation, the prosecutor [stated] that [Gibson] had no obligation to call any witnesses and that the burden rested solely on the government." *Parker*, 903 F.2d at 99. In light of the prosecutor's disclaimer, the challenged statements were proper. *See id*; *see also United States v. Singleton*, 2014 WL 1706266, at *5 (3d Cir. May 1, 2014)(holding that the prosecution did not improperly imply that the defense was obligated to

provide evidence where the challenged statement was immediately prefaced by a disclaimer on the burden of proof).   Additionally, when examined as a whole, it becomes obvious that these challenged statements were mere attempts to focus the jury's attention on holes in Gibson's theory of self-defense that was discussed during Gibson's own closing argument.   As such the prosecutor's statements were well within the prosecutor's discretion. *See Balter*, 91 F.3d at 441.   In fact, the statements were no more prejudicial, viewed in context, than those in *Fahy v. Horn*, a capital murder trial, where the Third Circuit found no prosecutorial misconduct.

In *Fahy*, a significant part of the defense strategy was to persuade the jury that the defendant had a close relationship with the victim, a child, and, therefore, could not have killed her.   516 F.3d 169, 199 (3d Cir. 2008).   In her closing argument, the prosecutor noted that the only witness who testified to a close relationship between the defendant and the victim was the defendant himself.   In pertinent part, the prosecutor argued: "Not one other person that took that stand, except the defendant, ever said that Nicky used to come over and kiss the defendant." *Id.*   In comparison, the prosecutor in Gibson's case did nothing more than note the lack of corroborating evidence supporting Gibson's central trial strategy.

Further, to preclude a prosecutor from commenting on the lack of evidence in support of a proposed defense theory would place "undesireable constraints" upon the government. *United States v. Gotchis*, 803 F.2d 74, 81 (2d Cir. 1986)(discussing the same). Ground 6 should, therefore, be deemed procedurally defaulted, because Gibson's underlying claim is insubstantial in that he cannot show the existence of prosecutorial misconduct worthy of an objection. In other words, Gibson has not shown cause and prejudice to overcome the default in accordance with *Martinez*.

**F. "Consolidated" Grounds 11 & 12: Ineffective assistance of trial counsel for not objecting to statements made during the prosecution's closing argument that were prejudicial, misstated the evidence, and vouched for witness credibility.**

In continuing with the same theme, Gibson contends that trial counsel was ineffective for failing to object to other alleged instances of prosecutorial misconduct. First, Gibson contends that the following statements made by the prosecutor in closing arguments were prejudicial and misstated the evidence: "These guys are not the most unlucky men in the world. They are killers. Killers who try to run, who try to give false testimony, who scare witnesses. They are not the most unlucky men in the world, they are killers, and their luck is running out." *Doc.* 24 at 31; *Doc.* 14-7 at 78. Based on Gibson's belief that the statements prejudiced him at trial, he argues that trial counsel was ineffective for failing to object.

48

In the PCRA Court's Rule 1925 Opinion, adopted as its own by the Pennsylvania Superior Court, the court made the following ruling:

> [Gibson] has failed to [demonstrate substantial prejudice]. The Commonwealth's comment made reference to the evidence that was presented, in that, [Gibson] admitted that he killed [the victim], it was clearly established that [Gibson] fled the state, and the witnesses were afraid to testify. Prosecutors are undoubtedly permitted to comment on the evidence or appropriate inferences from, and to employ "oratorical flair" in their arguments. *Commonwealth v. Hawkins*, 701 A.2d 492, 503 (Pa. 1997). That is exactly what the Commonwealth did here and, consequently, [Gibson's] claim has no merit.

*Doc.* 14-15 at 12-13. Gibson contends that this ruling was based upon an unreasonable determination of the facts because there was no evidence that Gibson gave false testimony or intimidated witnesses. *Doc.* 24 at 31-32. As well, Gibson contends that the ruling was an unreasonable application of *Strickland*. *Id.* at 32.

In the record presented to the State court, Gibson admitted to shooting the victim and he admitted to fleeing the scene. *Doc.* 14-6 at 13, 16, 19. Moreover, while testifying for the prosecution, the following dialogue occurred between Marcus Santos ("Santos") and the prosecutor:

> Q. When you jump out of the truck when you hear the shooting, did you see anybody with a gun at that point?
>
> A. (No response).
>
> Q. It is make or break time . . . come on. [A]fter you heard the shooting, tell this jury if you saw anybody with a gun? [sic]

****

49

Q.  Is this person who you saw with that gun putting it down and just walking away, is he in the courtroom today?

A.  (No response.)

Q.  Did you need me to repeat the question?

A.  No, I heard the question.

Q.  Is he in the courtroom today?

A.  (No response.)

THE COURT:   The Court directs the witness to answer the question.  Do you understand what I just said to you?
THE WITNESS:  Yeah.

[PROSECUTOR]: Let me back up for a question….

THE COURT:  Okay

Q.  [Santos,] do you want to be here today?

A.  I don't.

Q.  Are you afraid of testifying today?

A.  No, not really.

Q.  Are you sure about that?

A.  Um-hum.

****

Q.   Did you tell anyone that you were concerned about something that could happen at your garage?

A.  I told you I didn't want to get into this.  I told him . . . I didn't want to be in this.  I did everything I could to get out of this from the very beginning.  I get threatened constantly with contempt….  If I retract my statement that is going to be, basically, perjury.  I have no choice.  That night when I said everything I said the whole time, everything I kept hearing is I was going to be charged with conspiracy to commit homicide.  I know I didn't do anything.  So here I am.

****

Q.  I am going to resubmit the question to you.  Is this the guy who you saw with the gun in his hand as it dropped outside the truck…, is he in the courtroom today?

A.  (No response.)

Q.   You are bobbing your head up and down.   Is that nervousness…?

A.  It's nervousness, man.

Q.  Well, then what's the answer to the question?

A.  Yeah.

****

Q.  And you said you didn't get any threats from anybody; is that right?

A.  No I didn't get no threats.

Q.  But [Williams] talked to you, didn't he?

A.  Yeah, he talked to me.

Q.  About this case?

A.  Just a couple of days ago.

Q.  And even more than a couple of days ago, right?

A.  Yeah.

*Doc.* 14-5 at 7-11, 35-36.

On this record, the PCRA court's decision was not based upon an unreasonable determination of the facts.  There was evidence that: (1) Gibson killed the victim; (2) Gibson fled the scene of the shooting; and (3) at least one witness, Santos, was scared to testify against Gibson.  Although Santos attempted to blame his fear of testifying on the government, it is not unreasonable to interpret his hesitation and nervousness to mean that he also feared implicating Gibson.  Furthermore, Santos' testimony that he informed the prosecution that he did not want to get involved could likewise reasonably lead one to conclude that he feared testifying against Gibson.  With respect to the prosecutor's statement that Gibson tried to give false testimony, the PCRA Court did not make an explicit finding of fact.  Nevertheless, in light of its ruling, one reasonable theory is that the PCRA Court interpreted the prosecutor's statement to mean not that Gibson literally tried to give false testimony, but that, through Williams' conversations with Santos, the defendants, each, attempted to coerce Santos into testifying falsely despite Santos' testimony that he was not threatened by the defendants.[14]

---

[14]    Another reasonable interpretation of the prosecutor's statement that Gibson tried to give false testimony, is that the prosecutor, continuing with his theory of the case, intended his statement to reflect upon the lack of corroborating evidence.

In a similar vein, Gibson fails to show that the PCRA Court's decision was an unreasonable application of *Strickland*. As explained by the Supreme Court of Pennsylvania in *Commonwealth v. Hawkins*: "Generally, comments by a prosecutor do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility towards the defendant so that they could not weigh the evidence objectively and render a true verdict." 701 A.2d 492, 503 (Pa. 1997); *see Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(federal courts consider "whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process.")(internal quotations and cited case omitted); *Ramseur v. Beyer*, 983 F.2d 1215, 1239 (3d Cir. 1992). "Prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flare." *Hawkins*, 701 A.2d at 503.

Although the PCRA Court's ruling was not explicit, it is presumed that the court relied upon the first-prong of *Strickland* in denying this portion of Gibson's ineffective-assistance-of-counsel claim, as it found no prosecutorial misconduct. In finding the lack of prosecutorial misconduct, the Court's theory, as expressed in its conclusion, is that the prosecutor's statements were premised upon the evidence

---

The PCRA Court, however, did not make this explicit finding and it is unclear from the opinion whether it was the interpretation relied upon by the court. Nevertheless, this interpretation is also reasonable and consistent with the PCRA Court's ultimate conclusion, i.e. that the claim is meritless.

presented at trial and amounted to, permissible, oratorical flare.  This conclusion, therefore, was not unreasonable in light of the facts which have not been controverted.

As mentioned, Gibson raises several instances of prosecutorial misconduct. He also complains that trial counsel was ineffective for not objecting to instances where the prosecutor allegedly vouched for one its witnesses.  Gibson again focuses his argument on the prosecutor's closing where he stated that the jury ought to "[b]egin with what [it] know[s] is true" and later, "[w]hy would [Brown] say [Gibson] did this stuff when [Brown] did nothing?  Why?  Because it is what happened.  It's what happened." *Doc.* 24 at 31; *Doc.* 14-7 at 59, 62-63.

As pointed out in his supplemental brief, however, Gibson did not seek to challenge the latter statement when he raised this legal issue in the State courts. *See Doc.* 34 at 9.  Rather, Gibson only challenged the first statement.  *Id.*; *Doc.* 14-15 at 14-15.

In reviewing this legal issue, with respect to the first challenged statement, on PCRA appeal, the Pennsylvania Superior Court adopted the PCRA Court's ruling as its own.  The PCRA Court ruled as follows:

> [The prosecutor's] remark during closing argument, "start with what you know is true," was merely a statement to the jury of how they should begin their deliberations.  [The prosecutor] was not imparting his personal beliefs or opinions as to the truth of any testimony or evidence regarding any witness. [The prosecutor's] remark did not cause [Gibson] undue prejudice and

54

cannot be viewed as an attempt at putting his own prestige behind the witnesses.  Hence, this claim should be dismissed.

*Doc.* 14-15 at 14-15.  Gibson now argues that the State court's ruling was an unreasonable application of *Strickland*.  *Doc.* 24 at 32.

Vouching is a type of prosecutorial misconduct.  *Lam v. Kelchner*, 304 F.3d 256, 272 (3d Cir. 2002).  It constitutes an assurance by the prosecuting attorney of the credibility of a government witness through personal knowledge or by other information outside of the testimony before the jury.  *United States v. Walker*, 155 F.3d 180, 184 (3d Cir.1998) (citing *Lawn v. United States*, 355 U.S. 339, 359 n. 15 (1958)). In order to find vouching, two criteria must be met: (1) the prosecution must assure the jury that the testimony of a Government witness is credible, and (2) this assurance must be based on either the prosecutor's personal knowledge or other information that is not before the jury. *Walker*, 155 F.3d at 187.  Importantly, as stated before, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements … must be viewed in context." *Young*, 470 U.S. at 10.

Viewing the first challenged statement in context, the PCRA Court's ruling was not an unreasonable application of *Strickland*.   Halfway through the prosecutor's closing argument he stated:

> *Begin with what you know is true*.  J [a witness] was there.  J is in the passenger side back seat. [Gibson] is outside.  [Gibson] has

the gun.  [Gibson] killed [the victim]. There is no question about
any of those things.

He shot [a second victim].  He shot [a third victim].  And he ran
not from the scene, he walked from the scene.  Well, that is not
what you know is true.  That is an issue. . . .

And then when you have the fundamental facts in your head,
judge the credibility of the witnesses, assess them, what they
appear to be truthful about. Look for independent sources
corroborating [Gibson's theory of self-defense].

*Doc.* 14-7 at 59-61 (emphasis added).   As evident, the prosecution did not assure

the jury that the testimony of a government witness was credible.  Rather, the

challenged statement was, indeed, merely one to the jury of how they should begin

their deliberations, by examining the undisputed evidence.  Where the evidence

was in dispute, the prosecutor did not cross into unchartered territory; instead, he

simply reminded the jury that they are responsible for making credibility

determinations. Furthermore, at no point did the prosecutor impart his personal

opinion.  Thus, while the ruling is not explicit, we presume that since the PCRA

Court found no prosecutorial misconduct the Ground was denied on the deficient

performance prong, and as such was not an unreasonable application of *Strickland*.

Still, the analysis of this Consolidated Ground is not complete because

Gibson also seeks relief on the second challenged statement: "[w]hy would

[Brown] say [Gibson] did this stuff when [Brown] did nothing?  Why?  Because it

is what happened.  It's what happened."  This statement, however, was not fairly

presented to the State courts when the underlying ineffective-assistance-of-trial-counsel claim was addressed.   Under the circumstances, Gibson has failed to exhaust this portion of the Consolidated Ground.   Requiring Gibson to go back to the State courts would be futile since he is clearly foreclosed from bringing this unexhausted claim in State court.   Thus, this portion of the Consolidated ground should be deemed procedurally defaulted absent a showing of cause and prejudice, or a fundamental miscarriage of justice.

In Gibson's supplemental brief, he argues that the procedural default should be excused pursuant to *Martinez v. Ryan* because PCRA counsel should have raised this Ground.   *Doc.* 34 at 12.  For the following reasons, though, we find that the underlying ineffective-assistance-of-trial-counsel claim is insubstantial; therefore, Gibson cannot overcome the procedural default.

Towards the end of his discussion on the lack of corroborating evidence in support of Gibson's self-defense theory, the prosecutor stated: "[Brown].   You know, even [Gibson] says there is nothing between [them].  Why would [Brown] say [Gibson] did this stuff when [Brown] did nothing? Why? Because it is what happened.   It's what happened."  *See Doc.* 14-7 at 60-62.   From there, the prosecutor continued to address Gibson's theory and the lack of corroborating evidence. *See Doc.* 63-64.

In context, the prosecutor was not assuring the jury that the Commonwealth's witnesses were credible, much less that any such assurance was based on either the prosecutor's personal knowledge or other information that was not before the jury.   Rather, the statements were focused, premised upon the evidence presented, and sandwiched between the prosecutor's emphatic discussion of the lack of corroborating evidence.   Accordingly, Gibson cannot show that trial counsel was ineffective for not objecting, and this portion of the Consolidated Ground should be deemed procedurally defaulted.

## IV.   Discussion of Grounds 8 and 13.

Respondent contends that Grounds 8 and 13 have been procedurally defaulted.  *Doc.* 14-2 at 11, 13.   Upon review of the State court proceedings, it appears that Gibson failed to fairly present these claims to the State courts.   Like Gibson's other claims that were not fairly presented, requiring him to go back to the State courts to raise these Grounds would be futile.  *See Ali*, *supra*, 2014 WL 594330, at *3. As a result, Grounds 8 and 13 are unexhausted and procedurally defaulted absent a showing of cause and prejudice, or a fundamental miscarriage of justice.  Each remaining Ground will be addressed *seriatim*.

In Ground 8, Gibson claims that at arraignment he was denied, and not advised of, his right to counsel in violation of the Sixth Amendment.  *Doc.* 24 at 34.   Gibson further argues that PCRA counsel rendered ineffective assistance;

therefore, pursuant to *Martinez v. Ryan*, the procedural default should be excused. *Id.* at 35; *Doc.* 34 at 12.

In *Martinez*, the Supreme Court made clear that its opinion was solely designed to address a specific question left open by *Coleman v. Thompson*, *supra*: whether ineffective assistance in an initial-review collateral proceeding on a claim of ineffective assistance of trial counsel may provide cause for a procedural default in a federal habeas proceeding.   132 S.Ct. at 1315.   Answering that question in the affirmative, the *Martinez*-Court held: "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.* at 1320.   In reaching this limited holding, the Court expressed concern with being unable to review ineffective-assistance-of-trial-counsel claims on direct appeal due to independent and adequate state laws that required ineffective-assistance-of-trial-counsel claims to be raised for the first time on initial-collateral review only.   *See id.* at 1316-18; *see also Trevino*, 133 S.Ct. at 1914 ("In [*Martinez*], we considered the right of a state prisoner to raise, in a federal habeas corpus proceeding, *a claim of ineffective assistance of trial counsel*.")(Emphasis

added); *Banks v. Workman*, 692 F.3d 1133, 1147-48 (10th Cir. 2012)(recognizing the limited holding in *Martinez*).

Here, Gibson's underlying federal habeas claim is solely for denial of the right to counsel at arraignment, not ineffective assistance of trial counsel. Moreover, Gibson cited no authority, and we are unaware of any, that restricts Pennsylvania defendants from raising this same claim on direct appeal. Under these circumstances, *Martinez* has no impact on Gibson's case. Ground 8, therefore, should be deemed procedurally defaulted for his failure to show cause and prejudice, or a fundamental miscarriage of justice.

Moving forward, in Ground 13, Gibson alleges ineffective assistance of trial counsel for not timely objecting or requesting a curative action when Santos testified that the government threatened, or pressured, him into testifying. *Doc.* 24 at 34-35. As before, Gibson further argues that PCRA counsel rendered ineffective assistance; therefore, pursuant to *Martinez v. Ryan*, the procedural default should be excused. *Id.* at 35; *Doc.* 34 at 12. We disagree, finding instead that the underlying ineffective-assistance-of-trial-counsel claim is insubstantial.

As described in more detail, *supra*, the following dialogue occurred between Santos and the prosecutor, on direct examination:

Q. [Santos,] do you want to be here today?

A. I don't.

Q. Are you afraid of testifying today?

A. No, not really.

Q. Are you sure about that?

A. Um-hum.

\*\*\*\*

Q.   Did you tell anyone that you were concerned about something that could happen at your garage?

A. I told you I didn't want to get into this.  I told him . . . I didn't want to be in this.  I did everything I could to get out of this from the very beginning.  I get threatened constantly with contempt…. If I retract my statement that is going to be, basically, perjury.  I have no choice.  That night when I said everything I said the whole time, everything I kept hearing is I was going to be charged with conspiracy to commit homicide.  I know I didn't do anything.  So here I am.

\*\*\*\*

Q.  I am going to resubmit the question to you.  Is this the guy who you saw with the gun in his hand as it dropped outside the truck…, is he in the courtroom today?
A. (No response.)

Q. You are bobbing your head up and down.   Is that nervousness…?

A.  It's nervousness, man.

*Doc.* 14-5 at 7-10.   Santos later clarified that he was never threatened by the government, but did feel pressure to testify.  *See id.* at 32, 36.

At no point did Gibson's trial counsel object or seek curative action.  During the second PCRA hearing, however, Gibson's trial counsel testified that he was

"very happy" with Santos' response, because he viewed Santos' statements as attacking the Commonwealth's case and the procedures utilized by the government. *Doc.* 14-13 at 27.

In *Webb v. Texas*, the seminal case on this issue, the Supreme Court reversed the Texas Court of Criminal Appeals and found the defendant had been denied due process where the trial judge gratuitously and unnecessarily singled out the defendant's only witness for a lengthy admonition on the dangers of perjury, assuring the witness that if he lied he would be prosecuted and probably convicted of perjury, that the resulting sentence would be added onto the one he was serving and impair his chances of parole. After this warning, the witness had refused to testify and was excused by the court. In reversing the State court, the Supreme Court recognized that a defendant's right to present a defense is not absolute, but held that the government may not substantially interfere with the testimony of witnesses. *Webb v. Texas*, 409 U.S. 95, 98 (1972).[15]

Since *Webb* was decided, the Third Circuit has followed suit, stating that "[i]ntimidation or threats from the government that dissuade a potential witness from testifying may infringe a defendant's … right to due process …." *Lambert v. Blackwell*, 387 F.3d 210, 260 (3d Cir. 2004). Furthermore, although the trial judge

---

[15] It is also questionable whether the rule announced in *Webb* applies to the government's own witnesses. At least one Circuit Court, however, has recently made that extension. *United States v. Juan*, 704 F.3d 1137, 1142 (9th Cir. 2013).

was the target of the defendant's allegations of error in *Webb*, the *Webb* holding has been extended to cover the actions and conduct of prosecutors.  *See, e.g., United States v. Morrison*, 535 F.2d 223 (3d Cir. 1976).

Here, even assuming that Gibson can show that the government substantially interfered with Santos' testimony, by "forcing" him to testify against Gibson, trial counsel's decision not to object or seek a curative action was a tactical decision and sound trial strategy.  In fact, it is clear that Santos' statements, made in front of the jury about the pressure from the government, helped rather than hindered Gibson's case.  By essentially impeaching himself, Santos' credibility as a State witness was likely called into question along with the government's evidence-gathering procedures.  Unfortunately for Gibson, the jury rendered a guilty verdict having found that the prosecution met its burden.

In addition, the most incriminating testimony that Santos provided involved Gibson being in possession of a gun; however, Gibson was proceeding on a self-defense theory and had to be in the possession of a gun in order to satisfy the defense.  As well, Gibson has not shown, nor does he attempt to argue, that, absent the alleged pressure from the government, Santos would have provided favorable testimony.

Gibson, therefore, cannot show that trial counsel's performance fell below an objective standard of reasonableness, much less that there is a reasonable

probability that the result of the proceeding would have been different.  Ground 13, therefore, should be deemed procedurally defaulted as Gibson cannot overcome the default pursuant to *Martinez*, since his underlying ineffective-assistance-of-trial-counsel claim is insubstantial.

V.     **Recommendation.**

For the foregoing reasons, **IT IS RECOMMENDED** that Gibson's habeas corpus petition (*Doc. 1*) be **DENIED**. The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

> Failure to file timely objections to the foregoing Report and Recommendation may constitute a waiver of any appellate rights.

Submitted this **16th** day of **June, 2014**.

> *S/ Susan E. Schwab*
> Susan E. Schwab
> United States Magistrate Judge